Case Number TBD

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*IN RE:* **MAJOR MIKE WEBB**

**MAJOR MIKE WEBB,** *et al.*
**Petitioner,** *Pro Se*,

v.

**ALFONSO LOPEZ, JOSE QUIROZ,**
*et al.*,
**Respondents.**

**Petition for Writ of Mandamus**

---

**From the U.S. District Court for the District of Columbia**
**Civil Action No. 1:2023cv01239**

**Ana C. Reyes, Federal District Judge**

---

Major Mike Webb
P.O. Box 40391
Arlington, VA 22204
Phone: (856) 220-1354
Email: GiveFaithATry@Gmail.com
Petitioner-Appellant in *Pro Se*

---

### PETITION FOR WRIT OF MANDAMUS

In accordance with Fed.R.App.Pro. 21, Petitioner Major Mike Webb, *Pro Se*, hereby files this Petition for Writ of Mandamus to compel the Clerk for the U.S. District Court for the District of Columbia to, in compliance with Fed.R.Civ.Pro. 4(b) to "sign, seal, and issue it to the plaintiff for service on the defendant", as required by the rule, to compel the Trial Court to, in compliance with the praecipe filed at the commencement of the action, on April 27, 2023, direct the United States Marshal to perfect service of process against the named defendants and to compel the Trial Court to appoint election observers, as required under 52 U.S.C. § 10302(A).

### Procedure

In accordance with Fed.R.App.Pro. 21(a)(1), Petitioner is filing this "petition with the circuit clerk with proof of service on all parties to the proceeding in the trial court", as well as "to the

trial-court judge", and "[a]ll parties to the proceeding in the trial court other than the petitioner are respondents for all purposes."

### Relief Sought

In accordance with Fed.R.App.Pro. 21(a)(2)(B)(i), Petitioner avers entitlement to mandamus relief against the Clerk for the U.S. District Court for the District of Columbia, under authority of Fed.R.Civ.Pro. 4(b), in addition to mandamus relief against the Trial Court, under the authority of the 52 U.S.C. § 10302(A).

### Issues Presented

Mandamus is "a precise course accurately marked out by law, and is to be strictly pursued." *Marbury v. Madison*, 5 U.S. 137 (1803). Accordingly, pursuant to 28 U.S.C. § 1651(a), "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law", and "[n]o act of the Legislature confers so extraordinary a privilege, nor can it derive countenance from the doctrines of the common law." *Marbury v. Madison*, 5 U.S. 137 (1803).

"Mandamus is an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon him by law", Richlands Med. Ass'n v. Commonwealth, 230 Va. 384 (1985), and, since the earliest days of an inchoate democratic republic, it has been the rule that "[t]o render a mandamus a proper remedy, the officer to whom it is directed must be one to whom, on legal principles, such writ must be directed, and the person applying for it must be without any other specific remedy." *Marbury*, 5 U.S. 137, at (1803).

"The writ of mandamus issues, no matter from what court it is issued, only in those cases in which there is no other adequate legal remedy, and, therefore, to prevent a failure of justice." *Clay v. Ballard*, 87 Va. 787 (Va. 1891). Moreover, "[w]here the question is one of public right, and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are instituted, need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and as such, interested in the execution of the laws." High, *Extr. Rem.*, sec. 431. *See also Ferry v. Williams*, 41 N.J.L. 332 (Sup. Ct. 1879).

### Supporting Facts

#### *Protection of Voting Rights*

Pursuant to 52 U.S.C. § 10301(a), "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b)."

Pursuant to 52 U.S.C. § 10301(b), "[a] violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or

election in the State or political subdivision are *not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.*" (emphasis added) And, "[t]he *extent to which members of a protected class have been elected* to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." There are no African Americans elected to the Arlington Public School (APS) Board, a public school division in which projected Pre-K–12 enrollment is 27,586, and in which "APS' students hail from 145 nations and speak, 90 languages", with 44.1%, but the plurality being children of color, 28.7% Latino/Hispanic and 10.5% Negro, Staff, "APS Quick Facts, *APSVA*, https://www.apsva.us/wp-content/uploads/2023/03/APSQuickFacts-update0323.pdf (accessed May 23, 2023), and children of color remain the victims of a persistent achievement gap.*See* Scott McCaffrey, "Is Arlington school system's achievement gap an unsolvable problem?" *Arlington Sun Gazette/Inside NOVA*, May 27, 2022.

Petitioner took the opportunity, in complaint, to remind voting officials in Arlington, apparently granted license to act with impunity, that under 52 U.S.C. § 10307(b), "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties", and, under 52 U.S.C. § 10307(c), "[w]hoever knowingly or willfully gives false information as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both".

Moreover, under 52 U.S.C. § 10307(d), "[w]hoever, in any matter within the jurisdiction of an examiner or hearing officer knowingly and willfully falsifies or conceals a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

### *Conspiracy to Evade a Summons*

On or about May 19, 2023, Respondent Alfonso Lopez had at least what could be described as a chance meeting at the U.S. Post Office, located at 1210 North Glebe Road, Arlington, Virginia 22204, where Petitioner maintains a post office box, currently his only address, officially homeless since March 14, 2023, when the events giving rise to the underlying action had occurred. Respondent Lopez at least feigned ignorance regarding being named as the lead defendant in a racketeering action.

And, on just yesterday, too, at least feigning ignorance of current action, on or about May 23, 2023, elections officials at the offices of Respondent Arlington County Elections Board in the County of Arlington had directed Petitioner to file his candidate petitions, with signatures from voters, in compliance with, at the offices of Respondent State Board of Elections in Richmond. After the petitions were finally accepted, Petitioner presented a written complaint to Respondent Gretchen Reinemeyer, the General Registrar/Director at Office of Voter Registration, advising her and her office that

In accordance with Va. Code § 24.2-503[1], in the Commonwealth of Virginia, all non-primary party and independent candidates had been permitted to commence soliciting signatures of qualified voters in the election contests for House of Delegates on Tuesday, January 3, 2023, until the deadline for qualification on Tuesday June 20, 2023 at 7:00 p.m. (citing Va. Code § 24.2-501; Va. Code § 24.2-503).

The subject action, *Webb v. Lopez*, Civil Action No. 1:2023cv01239 (D.C. 2023), for this petition finds its genesis after Petitioner, the grandson of a franchise martyr, had encountered a fierce and determined opposition from state and local election officials while seeking to qualify for the November ballot, in a municipality in which partisan blogs have quite publicly acknowledged that "[o]nslaught, commando, and scorched earth come to mind", and that "[t]hose are usually employed in relation to the fall campaign when yet another Republican, an 'independent' who is really a Republican, or a real independent (often a pesky candidate who finds a way onto the ballot almost every year) is about to be drubbed in an election in the small but intensely political county just across the Potomac from the nation's capital." Cragg Hines, "Arlington Dems Pour It On, Boost 'Regular' Dem Mary Kadera to Big Victory in School Board Caucus Over 'Insurgent Candidate,'" *Blue Virginia*, May 26, 2021, while progressives as far away as Seattle have taken notice that Petitioner is "against current government efforts and recommendations for safety during the COVID-19 pandemic." Staff, "Mary Kadera: Democrat," *Progressive Voters Guide*, September 15, 2021, https://progressivevotersguide.com/index.php/virginia/2021/general/mary-kadera (accessed June 25, 2022).

The subject action, *Webb v. Lopez*, Civil Action No. 1:2023cv01239 (D.C. 2023), was commenced on April 21, 2023, with payment of the $402.00 filing fee, and with the filing of a Verified Complaint, ECF No. 1, a supporting Affidavit, ECF No. 3, and a Praecipe to direct the Trial Court to issue a summons, in compliance with Fed.R.Civ.Pro. 4(b), attaching prepared summonses for each defendant as addenda, but to date, no summons has yet been issued, preventing the United States Marshals from perfecting service of process, pursuant to the Praecipe.

---

[1] "The written statements of qualification and economic interests shall be filed by (i) primary candidates not later than the filing deadline for the primary, (ii) all other candidates for city and town offices to be filled at a May general election by 7:00 p.m. on the first Tuesday in March, (iii) candidates in special elections by the time of qualifying as a candidate, and (iv) all other candidates by 7:00 p.m. on the third Tuesday in June." *Id.*

Mindful that, in accordance with Fed.R.Crim.Pro. 6(a), "[w]hen the public interest so requires, the court must order that one or more grand juries be summoned", the Court may take judicial notice that the original action commenced against various parties was brought under the federal racketeering statute, wherein, violations of 18 U.S.C. § 1512, are included as predicate offenses under 18 U.S.C. § 1961(1)(B). Specifically, under 18 U.S.C. § 1512(a)(2)(B)(iii) and (iv), "[w]hoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to. . . evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or. . . be absent from an official proceeding to which that person has been summoned by legal process. . . shall be punished as provided in paragraph (3)."

Similarly, and mindful of Fed.R.Crim.Pro. 6(a), under 18 U.S.C. § 1512(b)(2)(C),"[w]hoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to. . . cause or induce any person to. . . evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding. . . shall be fined under this title or imprisoned not more than 20 years, or both."

"A 'pattern of racketeering activity,' requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period. *Ferri v. Berkowitz*, 678 F. Supp. 2d 66 §(E.D.N.Y. 2009) (citing 18 U.S.C, § 1961(5)). "A *RICO* pattern is established by showing that the predicate acts relied upon are 'related, and that they amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir.1999) (quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)) And, "[w]hen seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were 'neither isolated or sporadic.'" *Id.* (quoting *GICC Capital Corp. v. Technology Finance Group. Inc.*, 67 F.3d 463 (2d Cir.1995)). "The element of continuity may be satisfied by a showing of either 'open ended continuity' or 'closed ended continuity.'" *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989); *Cofacredit*, 187 F.3d at 242).

"To establish open ended continuity, it need not be shown that predicate acts were engaged in over an extended period of time"; rather, a "plaintiff must show that there was a threat of continuing criminal activity 'extending indefinitely into the future'", *Id.* (quoting " *H.J., Inc.*, 492 U.S. at 242), as, apparently continues to unfold within the court record, with violations under 18 U.S.C. § 1512, for conspiracy to evade a summons now alleged.

### *Appointment of Election Observers*

The subject action, *Webb v. Lopez*, Civil Action No. 1:2023cv01239 (D.C. 2023), had averred to the Trial Court that "[[b]y birth record, Petitioner is a Negro, and the Court may take judicial notice that under Section 1 of the *Fifteenth Amendment*, "[t]he right of citizens of the United States to vote shall not be denied or *abridged by the United States or by any state on account of race, color, or previous condition of servitude*" Verified Complaint, ¶ 12 (emphasis in original), and have evinced Petitioner's intent to trigger action under 52 U.S.C. § 10302(A), which provides that "[w]henever. . . an aggrieved person *institutes a proceeding under any statute to*

*enforce the voting guarantees of the fourteenth or fifteenth amendment* in any State or political subdivision the *court shall authorize the appointment of Federal observers* by the Director of the Office of Personnel Management", which, to date, such mandatory action has yet to occur.

"[T]he court need not authorize the appointment of observers if any incidents of denial or abridgement of the right to vote on account of race or color, or in contravention of the voting guarantees set forth in section 10303(f)(2) of this title (1) have been few in number and have been promptly and effectively corrected by State or local action, (2) the continuing effect of such incidents has been eliminated, and (3) there is no reasonable probability of their recurrence in the future." 52 U.S.C. § 10302(A). The necessity that had prompted the filing of this extraordinary action is clear and convincing evidence that the actions have not been corrected by state action, the continue effect has not been eliminated and there is high probability for their recurrence.

### Reasons Why Writ Should Issue

It had been the thought at the nation's highest court at during the early days of an inchoate democratic republic that "[i]t is emphatically the duty of the Judicial Department to say what the law is", and that "[t]hose who apply the rule to particular cases must, of necessity, expound and interpret the rule." *Marbury*, 5 U.S. 137, at (1803). However, some have argued, *see Webb v. Davenport*, Case No. CL22W03079-00 (Chesterfield Cir. 2022), *on appeal* Record No. TBD (Va. 2023); *Webb v. Porter*, Case No. CL2200236700 (Alexandria Cir. 2022), an affidavit from a competent witness, filed with the Commonwealth Attorney's Office, pursuant to Va. Code § 19.2-217[2], not only need not trigger the prosecution upon information of a discretionarily prosecutable misdemeanor, under Va. Code § 15.2-1627(B), but also need not trigger the convening of a grand jury investigation for felonies, contravening the plain meaning of the words in the controlling statute, which state: "The attorney for the Commonwealth and assistant attorney for the Commonwealth shall be a part of the department of law enforcement of the county or city in which he is elected or appointed, and *shall have the duties and powers* imposed upon him by general law, *including the duty of prosecuting all warrants, indictments or informations charging a felony,* and he may in his discretion, prosecute Class 1, 2 and 3 misdemeanors, or any other violation, the conviction of which carries a penalty of confinement in jail, or a fine of $500 or more, or both such confinement and fine." And this is a proposition with broad consensus. *See also , see Webb v. Department of the Army*, Civil Action 1:22-cv-02236 (UNA) (D.D.C. 2022), *aff'd* Record No. 22-5292 (D.C. Circuit 2022), *on petition for cert.* Record No. 22-7394 (U.S. 2022); *Webb v. DoD*, Docket Number DC-3443-18-0299-I-1 (MSPB 2018)

Yet, under generally accepted rules for statutory construction, "[t]he words 'must' and 'shall' are mandatory, and the word 'should' is not", *Twin Falls Cty. v. Idaho Comm'n on Redistricting*, 152 Idaho 346 (2012) (internal citations omitted), while "[w]hen used in a statute, the word 'may' is permissive." *Rife v. Long*, 127 Idaho 841 (1995), and such a rule of law might at least provide clarity, notice and certainty for outcomes and results, rather than subjecting ventures to

---

[2] "An information may be filed by the attorney for the Commonwealth based upon a complaint in writing verified by the oath of a competent witness." *Id.*

the courts to the whim of arbitrary and capricious currents that might alter from case to case, presenting inevitably a paradigm without a guarantee for equal protection.

"[I]n cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder. . . , the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short", *Eisert v. Town of Hempstead*, 918 F. Supp. 601 (E.D.N.Y. 1996), while the "fundamental requisite" of providing "the opportunity to be heard", *Grannis v. Ordean*, 234 U.S. 385 (1914), and "at a meaningful time and in a meaningful manner", *Armstrong v. Manzo*, 380 U.S. 545 (1965).

Some courts have said "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office", *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971). And, some courts have said that "[t]he loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury". *Doe v. Tangipahoa Par. Sch. Bd.*, 631 F. Supp. 2d 823 (E.D. La. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)).

"The ultimate purpose of the judicial process is to determine the truth", *Caldor, Inc. v. Bowden*, 330 Md. 632 (1993), and, if "whatever affects one directly affects all indirectly", Martin Luther King, Jr., *A Single Garment of Destiny*, March 31, 1968 "all we say to America is: 'Be true to what you said on paper.'" Martin Luther King, Jr., *I've Been to the Mountaintop*, April 4, 1968.

## **CERTIFICATION**

With this notice, Petitioner also provides, again, a change of address notice, for all future correspondence to be directed to P.O. Box 40391, Arlington, Virginia 22204.

I declare under penalty of perjury that the foregoing is true and correct.

Name of Party (Print or Type): <u>Major Mike Webb</u>
Address: <u>955 S. Columbus Street, Unit# 426, Arlington, Virginia 22204</u>
Email Address: <u>GiveFaithATry@gmail.com</u>

Signature: _____ Executed on: <u>5-23-23</u>
(Date)

Subscribed, acknowledged and sworn to before me, the undersigned Notary Public in the County of <u>VA</u> in the Commonwealth of Virginia, this <u>May</u> day of <u>23</u>, 20<u>23</u>.

NOTARY PUBLIC
My commission expires: <u>8038919</u>    Registration Number: <u>12-31-2027</u>

[Notary seal: CLARIS ZULEYMA CANIZALEZ MARROQUIN, NOTARY PUBLIC, COMMONWEALTH OF VIRGINIA, REG. #8038919, MY COMMISSION EXPIRES 12/31/2027]

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of May 2023, I will that I will mail this <u>Petition for Writ of Mandamus,</u> by hand delivery and/or email to the following parties, named in suit:

Alfonso Lopez, Esq.
Becker & Poliakoff
1275 K Street, N.W.
Suite 850
Washington, District of Columbia 20005
Telephone: (202)795-2435/(202) 621-7122
Email: ahlopez@beckerlawyers.com

Jose Quiroz
Arlington County Sheriff
1425 N Courthouse Road
Suite 9100
Arlington, Virginia 22201
Telephone: (703) 228-4460
Email: sheriff@arlingtonva.us

County of Arlington
Office of the County Attorney
2100 Clarendon Boulevard
Suite 403
Arlington, Virginia 22201
Telephone: (703) 228-3100
Email: cao@arlingtonva.us

Arlington Democrats
1235 S. Clark Street
Suite 207
Arlington, Virginia 22202
Telephone: (703) 528-8588
Email: info@arlingtondemocrats.org

Ivy Crimmins LLC
Attention: Stephen A. Bannister
3147 Woodland Lane
Alexandria, Virginia 22309
Telephone: (703) 671-4990
Email: corporate@capinvestad.com

Capital Investment Advisors, LLC
2560 Huntington Avenue, Suite 200
Alexandria, Virginia 22303
Telephone: (703) 836-1634
Email: corporate@capinvestad.com

Gretchen Reinemeyer
General Registrar/Director
Office of Voter Registration
2100 Clarendon Boulevard
Suite 320
Arlington, Virginia 22201
Telephone: (703) 228-3456
Email: Greinemeyer@arlingtonva.us

Arlington County Board of Elections/
Voter Registration & Elections
Office of Voter Registration
2100 Clarendon Boulevard
Suite 320
Arlington, Virginia 22201
Telephone: (703) 228-3456
Email: voters@arlingtonva.us

John O'Bannon
Chairman
State Board of Elections
Virginia Department of Elections
Washington Building
1100 Bank Street, First Floor
Richmond, Virginia 23219
Telephone: (804) 864-8901
Email: info@elections.virginia.gov

State Board of Elections
Virginia Department of Elections
Washington Building
1100 Bank Street, First Floor
Richmond, Virginia 23219
Telephone: (804) 864-8901
Email: info@elections.virginia.gov

Steven Nathan Siegel, Esq.
Meta Platforms, Inc.
575 7th Street, N.W. 20004
Telephone: (650) 812-9739
Email: ssiegel@fb.com

Clerk
U.S. District Court for
District of Columbia
333 Constitution Avenue, NW
Washington, District of Columbia 20001
Telephone: (202) 354-3190

Twitter, Inc.
4550 Connecticut Avenue, N.W.
Washington, District of Columbia 20008
Telephone: (415) 222-9670

Respectfully submitted,

_____
Major Mike Webb, *Pro Se*
P.O. Box 40391
Arlington, Virginia 22204
Phone: (856) 220-1354
Email: GiveFaithATry@gmail.com
Dated: May 23, 2023